THIRD DIVISION

DECEMBER 27, 2000

Nos. 1-99-3826; 1-99-4266 (cons.)

CPM PRODUCTIONS, INC., an ) Appeal from the

Illinois corporation, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, )

)

v. )

)

MOBB DEEP, INC. ) Honorable 

) John K. Madden,

Defendant-Appellant. ) Judge Presiding.

JUSTICE CERDA delivered the opinion of the court:

Following an arbitration in November 1997, plaintiff, CPM Productions, Inc. (CPM), obtained a monetary award against defendant, Mobb Deep, Inc. (Mobb Deep), for damages and expenses allegedly caused by Mobb Deep's breach of a contract to perform a musical concert in Chicago.  Upon Mobb Deep's failure to appear or otherwise answer the complaint of CPM seeking to enforce the arbitrator's award under the Illinois version of the Uniform Arbitration Act (710 ILCS 5/1 
et
 
seq.
 (West 1998)) (the Act), the circuit court entered a default judgment on the award.

Mobb Deep, through counsel, thereafter filed a special and limited appearance pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 1998)), together with a motion to quash CPM's service of process and to vacate the default judgment order for want of personal jurisdiction.

Mobb Deep's motion was denied on October 1, 1999, and CPM thereafter filed a motion to amend the court's order of judgment to reflect Mobb Deep's true identity as a partnership and not a corporation.  On November 1, 1999, after the filing of CPM's motion to amend, Mobb Deep filed an appeal from the court's default order and its order refusing to vacate that judgment (No. 1-99-3826).  On November 5, 1999, the court issued an amended judgment order reflecting Mobb Deep's status as a partnership and entering judgment against its partners, Albert Johnson and Kujuan Muchita.  Thereafter, on December 6, 1999, Mobb Deep filed a notice of appeal from the court's November 5 amended judgment order (No. 1-99-4266). 

In these consolidated appeals, Mobb Deep first challenges in appeal number 1-99-3826 the order of the circuit court denying its motion to quash service and to vacate the default judgment entered in favor of CPM.  Mobb Deep argues the court lacked subject-matter jurisdiction to enter a judgment on the arbitrator's award and, alternatively, contends the denial of its motion to quash service and vacate judgment was erroneous where CPM's service of process was ineffective to confer personal jurisdiction on the court.  With respect to appeal number 1-99-4266, Mobb Deep claims the filing of its first notice of appeal on November 1, 1999, deprived
 the circuit court of jurisdiction to enter the November 5
 order amending the default judgment.  Because, as Mobb Deep contends, the circuit court lacked the authority to exercise its jurisdiction in the case, we reverse and vacate the default judgment entered on the arbitrator's award in favor of CPM.

BACKGROUND

CPM is an Illinois corporation engaged in the business of
 producing concerts and stage shows featuring musicians and vocal artists.  Mobb Deep is a musical rap group consisting of two members, Albert Johnson and Kujuan Muchita.

In early 1997, CPM contacted Mobb Deep's representative agent, Violator Management, and booking agent, Ujaama Booking (Ujamma), about the prospect of engaging Mobb Deep to perform a concert in Chicago.  Following discussions, Ujaama sent CPM a written contract, dated March 24, 1997, providing for the concert performance of Mobb Deep, which is identified therein as "Mobb Deep, Inc.," in Chicago on April 25, 1997.  The contract required CPM to pay a flat fee of $10,000 plus additional consideration, and to forward an initial deposit of $5,000 to Ujaama before March 28, 1997.

Paragraph 10 of the contract set forth a dispute resolution mechanism to be followed by the parties in the event either of them was in breach of the agreement's provisions.  This paragraph provides:

"
Any
 
claim
 
or
 
dispute
 
arising
 
out
 
of
 
or
 
relating
 
to
 
this
 
agreement
 
or
 
the
 
breaching
 
thereof
 
shall
 
be
 
governed
 
by
 
the
 
laws
 
of
 
the
 
State
 
of
 
New
 
York
 
and
 
settled
 
by
 
arbitration
 
in
 
New
 
York
, 
New
 
York
 in accordance with the rules or regulations then obtaining of the American Arbitration Association.  The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof."  (Emphasis added.)

The contract was executed by Domingo Neris, CPM's president, who returned the signed agreement along with the initial check of $5,000 to Ujamma.  CPM acknowledges it never received an executed copy of the agreement by Mobb Deep.  Nonetheless, according to the allegations of the complaint, Ujamma orally advised CPM of its receipt of the deposit check and confirmed with CPM Mobb Deep's engagement pursuant to the terms of the agreement.  CPM thereafter proceeded with the necessary measures for the production of the concert.  However, on the scheduled date of the concert, Mobb Deep advised CPM that it was canceling its performance.

CPM followed by sending a demand for arbitration notice to the American Arbitration Association (AAA) in Chicago on June 6, 1997, requesting an arbitration hearing in Chicago on the issue of Mobb Deep's breach of the parties' contract.  The record shows that between June 6, 1997, and October 16, 1997, the AAA sent the parties several pieces of correspondence relating to the arbitration, including a notice scheduling the arbitration hearing for November 12, 1997, at the AAA's regional office in Chicago.

Despite this correspondence, Mobb Deep failed to appear at the November 12
 hearing.  Following the presentation of CPM's proofs, the arbitrator awarded CPM $36,466.50 in damages, plus an additional $1,125 in costs and expenses.  A copy of the arbitrator's award was sent to Mobb Deep by the AAA on November 26, 1997.

Because Mobb Deep failed to comply with CPM's demand for payment, CPM filed a verified complaint against "Mobb Deep, Inc." in the circuit court of Cook County seeking "to enforce the arbitration award."  Because Mobb Deep failed to appear or otherwise answer, Mobb Deep was found in default and the court entered judgment on the award in favor of CPM on April 29, 1999.

Mobb Deep formally filed a special and limited appearance on May 28, 1999.  Mobb Deep additionally filed a motion to quash the purported service of process, which was assertedly ineffective, and to vacate the court's entry of default judgment for want of personal jurisdiction.  The circuit court refused to quash service and vacate its judgment, and Mobb Deep's timely appeal followed.

ANALYSIS

The dispositive 
issue presented by this appeal is whether the circuit court properly exercised its subject-matter jurisdiction to enter judgment on the award of the arbitrator.  This asserted lack of jurisdiction is Mobb Deep's main contention on appeal.  Although Mobb Deep never challenged the circuit court's authority below and raises this matter for the first time on review, the asserted lack of the circuit court's authority to exercise its subject-matter jurisdiction can be raised at anytime, including for the first time on appeal.  
In re Estate of Gebis
, 186 Ill. 2d 188, 193, 710 N.E.2d 385, 387 (1999); 
Reyes v. Court of Claims
, 299 Ill. App. 3d 1097, 1101, 702 N.E.2d 224, 228 (1998).  The issue of whether the circuit court properly exercised its jurisdiction is reviewed by this court 
de
 
novo
.  See 
Reyes
, 299 Ill. App. 3d at 1101, 702 N.E.2d at 228.

According to Mobb Deep, the circuit court lacked jurisdiction to enter judgment on the arbitrator's award since the parties' agreement to arbitrate did not provide for arbitration in Illinois, but rather New York City.  Because the arbitration occurred in Chicago, Mobb Deep claims the circuit court was without authority to enter judgment in the case.

Pursuant to the Illinois Constitution, the circuit court has, with certain limited exceptions not pertinent to this appeal, "original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, §9.  
"Subject-matter jurisdiction" refers to the court's power both to entertain and determine the general question presented by the case and to grant the particular relief requested.
  
Gebis
, 186 Ill. 2d at 192, 710 N.E.2d at 388; 
Health Cost Controls v. Sevilla
, 307 Ill. App. 3d 582, 587, 718 N.E.2d 558, 562 (1999).  

Although the legislature has no authority to limit the original jurisdiction of the circuit courts to hear justiciable matters, it may create a justiciable matter - and thereby expand the jurisdiction of the circuit court - by enacting a statute that creates rights or duties that did not exist, and had no counterpart, in the common law or equity.
  
Gebis
, 186 Ill. 2d at 192, 710 N.E.2d at 387; 
In re K.S.
, 264 Ill. App. 3d 963, 966, 637 N.E.2d 1163, 1165 (1994).  While the circuit court's original jurisdiction to adjudicate the matter derives from the constitution in such instances, the justiciable matter itself is defined by the statute.  
Gebis
, 186 Ill. 2d at 192, 710 N.E.2d at 387.  The legislature may define the justiciable matter in such a manner as to limit or preclude the circuit court's authority, and where the justiciable matter is so defined, the circuit court is governed by the rules of limited jurisdiction and must proceed within the strictures of the statute.  
Gebis
, 186 Ill. 2d at 192-93, 710 N.E.2d at 387; 
In re R.V.
, 288 Ill. App. 3d 860, 867, 681 N.E.2d 660, 666 (1997).  That is, since the justiciable matter is statutory in origin, the legislature may impose nonwaivable conditions precedent to the circuit court's exercise of jurisdiction.  
In re Marriage of Fields
, 288 Ill. App. 3d 1053, 1057, 681 N.E.2d 166, 170 (1997).  While the failure to comply with such conditions may result in what many courts have deemed a "lack of jurisdiction," in reality the court suffers from an inability to exercise its constitutionally conferred jurisdiction.  
Fields
, 288 Ill. App. 3d at 1057-58, 681 N.E.2d at 170; see also 
In re C.S.
, 294 Ill. App. 3d 780, 786, 691 N.E.2d 161, 165 (1998) (where a court in such a case fails to proceed in accordance with the strictures of the statute, the court does not somehow lose its constitutionally conferred subject-matter jurisdiction; instead, it simply proceeds in error because it lacked statutory authority).  Any action taken by the circuit court that exceeds its jurisdiction is void.  
Gebis
, 186 Ill. 2d at 193, 710 N.E.2d at 387.

The question of whether the right to have a circuit court enter judgment on an award, as permitted by the Act, existed at common law or whether that right is purely a creature of statute was seemingly resolved by our supreme court in 
Chicago Southshore & South Bend R.R. v. Northern Indiana Commuter Transportation District
, 184 Ill. 2d 151, 703 N.E.2d 7 (1998).  There, Chicago Southshore and South Bend Railroad (Southshore) prevailed against Northern Indiana Commuter Transportation District (NICTD) at an arbitration hearing that was held, upon the mutual accord of the parties and in derogation of the parties' express written agreement, in Chicago.  Pursuant to the express terms of their agreement, all arbitration proceedings were required to be conducted "within the State of Indiana."  184 Ill. 2d at 152-53, 703 N.E.2d at 8.

NICTD subsequently filed a declaratory judgment action in the superior court of Indiana seeking judicial review of the arbitration award on the ground that it was based on an error of law.  Southshore responded by filing a motion in the circuit court of Cook County to confirm the award pursuant to section 11 of the Act (710 ILCS 5/11 (West 1998)).  NICTD moved to dismiss Southshore's motion on the ground that the Illinois circuit court lacked jurisdiction to confirm the award.  Finding proper jurisdiction over the matter, the Illinois court denied NICTD's motion and entered judgment confirming the award.  The circuit court's ruling was subsequently affirmed on appeal.

On appeal to the Illinois Supreme Court, the issue was framed as whether the Chicago arbitration award could have been confirmed by an Illinois court under the Act or whether any judicial proceedings pertaining to the award had to take place in Indiana.  
Chicago Southshore
, 184 Ill. 2d at 152, 703 N.E.2d at 8.  In addressing this matter, the supreme court considered the language of the parties' written arbitration submission in light of section 16 of the Act, which provides:

"Court, Jurisdiction.  The term 'court' means any circuit court of this State.  The making of an agreement described in Section 1 [(which provides that any written agreement to submit any existing or future controversy to arbitration is valid and enforceable)] providing for arbitration in this State confers jurisdiction on the court to enforce the agreement under this Act and to enter judgment on an award thereunder."  710 ILCS 5/16 (West 1998).
(footnote: 1)
 The supreme court determined that, "under the plain language of the statute, the parties' written agreement must provide for arbitration in Illinois in order for Illinois courts to exercise jurisdiction to confirm an arbitration award."  
Chicago Southshore
, 184 Ill. 2d at 155-56, 703 N.E.2d at 9.  Because the agreement between NICTD and Southshore explicitly provided for arbitration in Indiana, not Illinois (
Chicago Southshore
, 184 Ill. 2d at 156, 703 N.E.2d at 9), and because NICTD did not waive this provision  (184 Ill. 2d at 158, 703 N.E.2d at 11), the court concluded that the Illinois circuit court lacked subject-matter jurisdiction to confirm the arbitration award and that any legal proceedings concerning the arbitration proceeding had to occur in Indiana.  
184 Ill. 2d at 152, 703 N.E.2d at 8.

Mobb Deep argues that 
Chicago Southshore
 commands a similar finding here that the Cook County circuit court lacked the subject-matter jurisdiction to enter judgment on the arbitrator's award where the arbitration clause in the parties' contract provided for arbitration in New York, not Illinois.  Since the arbitration took place in Illinois, in violation of the agreement, Mobb Deep asserts that no jurisdiction was conferred upon the circuit court under section 16 of the Act, and that by entering judgment, the court exceeded its jurisdictional authority.

A careful examination of 
Chicago Southshore
 reveals that the right to have judgment entered on an award is wholly a creature of statute that had no counterpart at common law or equity.  The supreme court, however, did not express such a finding and never examined the Act in light of the subject-matter jurisdiction principles discussed above.

CPM steadfastly maintains the right to have a judgment entered on an award was well known at the common law.  A review of Illinois law reveals that while parties had a common law right to submit their differences to arbitration, the circuit court's authority to enter judgment on an award is purely statutory in nature.  As early as 1827, the General Assembly enacted legislation authorizing the entry of judgment on an award under certain circumstances.  Rev. Stat. 1827 § 1.  Such arbitration statutes existed on the books up until the time the Illinois version of the Uniform Act was adopted in 1961.  See Rev. Stat. 1845, ch. VII,
 §§ 1, 7, 8; Ill. Rev. Stat. 1917, ch. X, pars. 1, 8, 9; Ill. Rev. Stat. 1959, ch. 10, pars. 1, 8, 9.

Before the legislature's adoption of the Act, a party who prevailed at an arbitration had essentially two options of enforcing an award.  First, one could bring an action at law against the opposing party, usually in assumpsit.  At common law, a court had no inherent authority to enter a judgment on an arbitration award because, unlike a judgment, the award itself was not self-executing.  Rather, the award represented a contract between the parties, and accordingly the remedy of the prevailing party was to bring suit predicated in the law of contract.  See 
Smith v. Douglass
, 16 Ill. 34, 35 (1854) (where judgment is not sought under statute, the award may be enforced at law); 
Low v. Nolte
, 16 Ill 475, 476-77 (1855) (recognizing that an action at common law can be maintained on an arbitration award rendered under the parties' submission that does not comply with the arbitration statute);
 
Cocalis v. Nazlides
, 308 Ill. 152, 155, 139 N.E. 95, 97 (1923) (explaining an arbitration award "might be enforced by an action at law" or, in the proper case, in equity through an action for specific performance);
 
Duffy v. Odell
, 117 Ill. App. 336, 339 (1904) (recognizing that prevailing party has remedies available at common law to enforce arbitrator's award);
 see also 3 Ill. L. & Prac. 
Arbitration & Awards
 §39, at 346 (1953) ("[t]he successful party in a general submission under the common law has a right of action on the award, and an award may be good at common law so as to permit the maintenance of an action notwithstanding judgment could not be directly entered thereon"); Glink, 
An Uniform Arbitration Act for Illinois?
, 1955 l. F. 297, 302 (at common law, "[t]he award is binding even though a judgment cannot be entered directly upon it.  A separate action prosecuted through to judgment is required before the award becomes effective"); 4 Am. Jur. 2d 
Alternative Dispute Resolution
 § 218, at 247 (1995).

Alternatively, the prevailing party could seek enforcement of the award as a judgment under the predecessor arbitration statutes.  Generally, the prevailing party could, upon compliance with the statute's provisions, secure a judgment on the award as on the verdict of a jury in most instances.  Ill. Rev. Code 1927, ch. X, par. 1; Rev. Stat. 1845, ch. VII, par. 8; Ill. Rev. Stat. 1917, ch. X, par. 9; Ill. Rev. Stat. 1959, ch. 10, par. 9.

However, strict compliance with the statute's provisions was necessary before the circuit court could exercise its subject-matter jurisdiction and enter judgment on the award.  Absent such compliance, the court lacked the authority to enter judgment, and the prevailing party was relegated to his common law remedies.  See 
Low v. Nolte
, 15 Ill. 368, 374 (1854) (holding the conditions imposed by the arbitration statute were "indispensable formalities in order to give the court jurisdiction to enter judgment upon the [arbitration] award," and explaining that where these formalities were not met, "the parties must be left to their common law remedies")
; 
Eisenmeyer v. Sauter
, 77 Ill. 515, 516 (1875) (holding that strict compliance with arbitration statute is necessary for circuit court to obtain the necessary jurisdiction to enter a judgment on an award and explaining that, while no judgment can be entered on an award under the statute where its provisions are not complied with, the award was good at common law and the parties could maintain their independent action upon it);
 
Martine v. Harvey
, 12 Ill. App. 587, 590
 (1883) ("[j]urisdiction to enter judgment upon awards of arbitrators, is conferred by the statute upon courts of record" and the procedure to have a judgment entered, "being wholly statutory, must conform strictly to the requirements of the statute or the court will have no jurisdiction nor authority to enter judgment upon the award");
 
Duffy
, 117 Ill. App. at 340 (explaining that where party seeks to have judgment entered on arbitration award pursuant to statute, the party "must show that the statute *** has been strictly complied with in all essential particulars before his request can be granted" and that "[w]ithout such showing the court lacks jurisdiction to make the order");
 see also 3 Ill. L. Prac. 
Arbitration & Awards
 §38, at 344-45 (1953) ("[j]urisdiction to enter judgment on an award of arbitrators is wholly statutory and the court cannot render judgment on the award unless the submission, award, and proceedings comply with the statutory requirements").

What can be gleaned from the above is that a party's right to have an arbitration award entered as a judgment by the circuit court, without that party having to institute and prosecute an action at law, is purely a creature of statute and, as such, requires the prevailing party to satisfy all statutory conditions necessary for the circuit court to exercise its constitutionally conferred subject-matter jurisdiction and enter judgment on the award.  Clearly, then, section 16 of the Act represents a prerequisite to the circuit court's exercise of jurisdiction over an application seeking judgment on an award specifically conditioning the court's jurisdiction on the particular locale of the arbitration proceedings as provided for in the parties' agreement.  As stated in 
Chicago Southshore
, only where the parties' arbitration agreement provides for arbitration in Illinois will the Act confer jurisdiction on the Illinois circuit courts to enter judgment.  Only then will the circuit court be able to properly exercise its authority.

An express aim of the Act is that its provisions are to be construed as to effectuate its general purpose to make uniform the law of those states which enact it.  710 ILCS 5/20 (West 1998).
  Our determination comports with the holdings expressed by courts in other jurisdictions.  See 
Northern Indiana Commuter Transportation District v. Chicago Southshore & South Bend R.R.
, 685 N.E.2d 680, 694-95 (Ind. 1997) (noting that counterpart section in Indiana Uniform Act essentially enables the parties to control by contract what court may review an action to enforce an award and effectively provides the basis of jurisdiction); 
Tru Green Corp. v. Sampson
, 802 S.W.2d 951, 953 (Ky. App. 1991) (holding that the plain meaning of the counterpart provision in the Kentucky Uniform Act reveals that the arbitration agreement must provide for the arbitration itself to be in Kentucky in order to confer subject-matter jurisdiction on a Kentucky court); 
H.T.I. Corp. v. Lida Manufacturing Co.
, 785 S.W.2d 110, 111-12 (Mo. App. 1990) (holding that counterpart section of Missouri Uniform Act confers jurisdiction on circuit courts of that state to enter judgment on an award, and concluding that circuit court had no jurisdiction to act where the parties agreement provided for arbitration in New York and not Missouri); see also 
State ex rel. Tri-City Construction Co. v. Marsh
, 668 S.W.2d 148, 151 (Mo. App. 1984); 
Daniels Insurance Agency, Inc. v. Jordan
, 99 N.M. 297, 299, 657 P.2d 624, 626 (1982).

The arbitration clause in the parties' contract unequivocally provided for arbitration in New York.  The arbitration hearing, however, occurred in Chicago, upon the request of CPM.  Consequently, the circuit court, while having the original power over the case generally, lacked the authority to act on the award.

CPM stresses that the arbitration clause in the parties' contract provides that "judgment upon the award rendered may be entered in any court having jurisdiction thereof."  Relying on this provision, CPM argues that the arbitration clause does not vest subject-matter jurisdiction exclusively in one forum, such as New York, but permits any court having jurisdiction of the matter to review and enter judgment on the award.  CPM's argument, yet, begs the question of the circuit court's authority; a court can enforce an award entered in favor of one of the parties only where the court has the power to exercise its jurisdiction in the first instance.

CPM places further significance on the language in the clause providing that the arbitration was to be "settled *** in accordance with the rules or regulations *** of the American Arbitration Association."  CPM maintains that since the AAA rules allow the parties to designate the forum for arbitration, the contract allowed for the arbitration to be held in Chicago, thereby conferring jurisdiction on the circuit court.  We disagree.  The express intent of the parties' submission was to hold all arbitration proceedings in New York.  The AAA rules relied upon by CPM cannot be used to trump the parties' express intention as reflected in their agreement.  A more accurate reading of the arbitration clause indicates that only those AAA rules or regulations concerning the course of the hearing itself would be applicable.

Because the circuit court lacked the authority to act on the award, we vacate the judgment entered on the arbitrator's award in favor of CPM.  
In light of our ruling, we need not address either the matter of whether the circuit court properly obtained personal jurisdiction over Mobb Deep or the issues presented by Mobb Deep's appeal from the court's amended judgment.

CONCLUSION

For the foregoing reasons, the order of the circuit court entering
 default judgment on the arbitrator's award issued in favor of CPM is vacated.

Reversed and circuit court judgment vacated.

BURKE and WOLFSON, JJ., concur.

FOOTNOTES
1:
This section is substantially similar to section 17 contained in the Uniform Arbitration Act.  Uniform Arbitration Act §17, 7 U.L.A. 429 (1997).