2022 IL App (1st) 210119

No. 1-21-0119

Opinion filed January 18, 2022

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| 2460-68 CLARK, LLC, an Illinois Limited Liability Company, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020-M1-705775 |
| | ) | |
| CHOPO CHICKEN, LLC, an Illinois Limited Liability Company, and GABRIEL POBLETE, | ) | The Honorable |
| | ) | David A. Skryd, |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     On August 15, 2016, a commercial lease for a premises at 2460 North Clark Street in Chicago was entered into by the plaintiff, 2460-68 Clark, LLC (landlord), and defendant Chopo Chicken, LLC (tenant). Defendant Gabriel Poblete executed a guarantee of that lease. (Unless otherwise noted, we will refer to Chopo Chicken, LLC, and Poblete collectively as tenants.) The lease and guarantee were thereafter amended twice, on September 1, 2019, and May 25, 2020. As amended, the term of the lease expired on August 31, 2021, and the monthly rent was $5650. The lease

provided that the tenants' failure to pay rent within five days of the landlord sending written notice demanding it constituted a breach of the lease and allowed the landlord to exercise the remedies provided under the lease. Other provisions of the lease relevant to this appeal are discussed below.

¶ 2        On August 14, 2020, Dan Gauen, an employee of the landlord's property manager, served upon the tenants a five-day notice demanding payment of $3991.36 in overdue rent, which stated that unless payment of this sum was made within five days of service, the tenants' right to possession of the premises would terminate. Gauen served the five-day notice by hand delivery upon an employee of the tenants working at the premises.

¶ 3        On August 26, 2020, the landlord filed a complaint for forcible entry and detainer, breach of contract, and breach of guarantee against the tenants. The complaint alleged that the tenants had failed to pay the overdue rent within five days of service of the written notice demanding it and for this reason were in default of the lease and guarantee. It sought a judgment granting the landlord possession of the premises as well as other remedies available under the lease, including "a sum equal to the amount of unpaid rent and other charges and adjustments called for under the Lease for the remaining balance of the term of the Lease, from September 1, 2020 through August 31, 2021, *** as damages due to Landlord by reason of Tenant's defaults."

¶ 4        On October 1, 2020, an appearance was filed on behalf of the tenants. The case was set for bench trial on October 27, 2020, which was conducted remotely by video conference. The parties have submitted a bystander's report of the bench trial proceedings of October 27, 2020, which was certified by the trial court. According to that bystander's report, the parties' attorneys and witnesses were visible by video during the court of the trial, but the trial judge's video remained off throughout the trial.

¶ 5      Gauen testified behalf of the landlord. He is employed by Jerome H. Meyer & Company and acts as the property manager of the premises at issue. His job responsibilities include the collection of rent, issuing tenant ledgers, and communicating with tenants. He testified as to various provisions of the lease and its two amendments, which were admitted into evidence. This included article 7 of the lease, which addressed certain fixtures and equipment being left in place at the end of the lease term. It also included article 20(A), which detailed that the landlord's remedies upon the tenants' default included receipt of a sum equal to the amount of unpaid rent for the balance of the lease term as damages, as well as attorney fees and costs.

¶ 6      Gauen testified that. in 2020, the landlord had agreed to provide the tenants with relief with respect to COVID-19, whereby rent was conditionally abated to one-half of the normal rate for the months of June and July 2020. Under the second amendment to the lease agreement, the tenants were required to resume paying the full rental rate of $5650 on August 1, 2020. Gauen testified that the tenants paid only $2000 on August 5, 2020, and identified a tenant ledger confirming this payment, which was admitted into evidence. He testified that on August 13, 2020, he prepared a five-day notice demanding the amount of unpaid rent due and owing from the tenants as of that date, which was then $3991.36. He testified that he served the five-day notice by hand delivering it to an employee of the tenants who was then in charge of the premises. Gauen testified that the tenants did not pay the amount demanded in the five-day notice.

¶ 7      The trial court then asked the tenants' attorney what their defense was to the landlord's case. The tenants' attorney stated, "Judge, it's Covid." The tenants' attorney further stated that the tenants were unable to perform due to COVID-19, had struggled financially, and had unsuccessfully sought to renegotiate and reduce the amount of rent with the landlord.

¶ 8        Poblete then testified on behalf of the tenants. He testified generally as to the tenants' inability to perform under the lease due to COVID-19 and the related government-ordered closures of the restaurant operated out of the subject property. He testified that the tenants were required to and did comply with the governor's executive orders. However, sales plummeted due to the forced closure of the restaurant, and it struggled to stay afloat. Poblete testified that, despite the struggles that he and the business faced, he did everything that he could to help the restaurant survive, including putting his own funds into it. Poblete testified that he applied for the Paycheck Protection Program and a Small Business Administration loan, which he received. He testified it helped cover some expenses and employee payroll for a period of time, but it did not provide a substitute for the restaurant's typical sales.

¶ 9        Poblete testified that during the spring of 2020, he reached out to James Winkler, a representative of the landlord, numerous times for assistance. The landlord agreed to abate the rent by half for the months of June and July 2020. Beginning in July 2020, he again contacted Winkler for assistance with the upcoming August rent. He tried to negotiate rent or work out some other arrangement with Winkler so that the restaurant could continue to operate, but no agreement was reached. The tenants then sought to introduce a series of e-mails exchanged between Poblete and Winkler. The landlord's attorney objected to the admission of these e-mails on grounds of relevance and the integration clause of the parties' lease. The tenants' attorney responded that the e-mails were not being introduced to show any amendment or modification of the lease but rather to support the tenants' defense of an inability to pay and to show the efforts made to contact the landlord regarding this. The landlord's attorney stated that she did not object to the e-mails being introduced, as long as they were not being used to argue for an amendment or modification of the lease. The trial court sustained the landlord's objection, finding that Poblete had already testified

about the tenants' inability to pay and ruling that the e-mails would not be admitted as evidence. The trial court further sustained an objection by the landlord's attorney to the tenants' attorney questioning Poblete about the e-mails or having Poblete discuss them. On cross-examination, Poblete admitted that the tenants did not pay the amounts due in the five-day notice within five days of service of it. He also admitted that the landlord had not agreed to modify the lease.

¶ 10    The trial court found that the tenants had raised no defense to liability on the landlord's action for eviction and return of possession of the premises to the landlord under the forcible entry and detainer action or on the action for breach of contract. The court then turned to the damages sought by the landlord. The landlord's attorney relied upon several exhibits showing damages, which were admitted by the trial court, and stated that Winkler was prepared to testify further about damages if necessary. One of these exhibits was a letter from the landlord to the tenants dated February 11, 2019, referencing article 7 of the lease and including a list of 18 categories of items of equipment and fixtures that the landlord was requiring the tenants to leave in place at the end of the tenants' tenancy. Another exhibit was an itemization of the damages requested, which included $56,500 for the balance owed as rent for the 10 months from November 1, 2020, to the end of the lease term on August 31, 2021, pursuant to articles 20(A)(i) and 20(A)(ii) of the lease.

¶ 11    Poblete testified in opposition to the landlord's damages request. He testified that he had purchased the equipment in the restaurant for approximately $200,000, and that, in its present condition, it was worth $150,000. No receipts or other evidence concerning the purported value of the used equipment was provided. The tenants' attorney argued that the tenants should receive a credit of $150,000 for the value of the used equipment that would be left in place. The landlord's attorney argued that article 7 of the lease controlled, that it required that the equipment and fixtures

be left in place at the end of the tenancy, and that it did not provide the tenants with any compensation for the equipment that was to be left in place.

¶ 12    At the end of the trial, the trial court asked the tenants' attorney if the tenants had any additional objections to the landlord's summary of damages for the judgment award. The tenants' attorney responded that the tenants objected to all charges and amounts sought on the basis that the charges were excessive, the attorney fees sought were excessive, and that the landlord would receive a windfall if it was awarded the equipment left in place in addition to receiving damages.

¶ 13    The trial court overruled the tenants' objections. The court found that the terms of the lease and its amendments controlled, and it entered judgment in favor of the landlord and against the tenants, jointly and severally, in the amount of $120,547.81. The trial court further entered an eviction order that granted the landlord an order of immediate possession of the premises and required the tenants to leave in place at the premises 18 categories of fixtures and equipment.

¶ 14    On November 25, 2020, the tenants filed a motion for reconsideration. That motion argued that the award of damages in favor of the landlord was prohibited by law because the landlord had failed to present any evidence that it had mitigated its damages. It also argued that the trial court improperly awarded the landlord a windfall by allowing the landlord to retain the equipment and fixtures in addition to the other money damages awarded. It argued that the trial court had abused its discretion and denied the tenants a fair trial by prohibiting their attorney from cross-examining the landlord's sole witness at trial, by refusing to turn on its camera for the entirety of a trial conducted by video conference such that the parties could not observe the judge, by barring the admission of e-mails to which the landlord's attorney had not objected, by concluding that the subject equipment was valueless despite unrebutted evidence to the contrary, and by repeatedly discouraging the tenants' attorney from proffering evidence and testimony in an attempt to hasten

the trial. Finally, it argued that subject matter jurisdiction was lacking based on purported defects in the landlord's service of the five-day notice.

¶ 15    On December 11, 2020, the landlord filed its response to the motion for reconsideration. It argued that the tenants' arguments concerning mitigation of damages, retention of equipment, cross-examination, the court's camera being off, and subject matter jurisdiction were all issues that could have been raised at trial but were not and they could not be the basis for reconsideration. It further responded to the merits of each of the tenants' arguments.

¶ 16    On December 18, 2020, the tenants filed a supplement to their motion for reconsideration. That supplement stated that, "[u]pon information, [the landlord] has recently relet the premises to a tenant named 'Litos' " and that "[u]pon further information, the monthly rent that Litos is obligated to pay far exceeds the monthly rent that Chopo Chicken LLC was obligated to pay under its Lease." It went on to argue that the judgment entered by the trial court must be reduced or eliminated to reflect the future amount that the landlord has received and will receive pursuant to its new lease with Litos, citing article 20(C) of the lease.

¶ 17    The landlord filed a response to the tenants' supplement, arguing that it merely consisted of unsubstantiated conjecture. It argued that the defense of mitigation of damages was not raised at trial and that article 20(C) of the lease did not apply unless the landlord chose to relet the premises "for the account of Tenant," which had not occurred here.

¶ 18    On January 5, 2021, the trial court heard oral argument on the tenants' motion for reconsideration. No transcript of this hearing is included in the record, and the bystander's report states merely that the motion for reconsideration was denied. The written order from that date likewise states only that the motion for reconsideration and supplement to the motion for reconsideration was denied. The tenants thereafter filed a timely notice of appeal.

¶ 19                                              ANALYSIS

¶ 20                                   Subject Matter Jurisdiction

¶ 21       We begin our analysis with the tenants' argument that subject matter jurisdiction over this forcible entry and detainer action is lacking due to defects in the method by which the landlord served the five-day notice on the tenants. The tenants do not challenge the existence of personal jurisdiction, as they filed appearances and participated in the case. They argue only that subject matter jurisdiction is absent because the five-day notice was not served in the manner called for in the lease or by one of the methods for effecting service of process on a limited liability company.

¶ 22       Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by the Illinois Constitution. *Id.* It is not conferred by the general assembly. *Id.* at 336. Section 9 of article VI of the constitution provides that, with certain exceptions not pertinent here, "Circuit Courts shall have original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, § 9. Whether a circuit court has subject matter jurisdiction to entertain a claim is a question of law reviewed *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18. A challenge to the existence of subject matter jurisdiction may be raised for the first time on appeal. *CPM Productions, Inc. v. Mobb Deep, Inc.*, 318 Ill. App. 3d 369, 373 (2000).

¶ 23       In *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶¶ 13-20, this court considered and rejected the exact argument made by the tenants in this case, which is that defects in service of a five-day notice can deprive the trial court of subject matter jurisdiction in a forcible entry and detainer action. The argument stems from the concept that a forcible entry and detainer action is a

"special statutory proceeding" and that therefore a party seeking to recover possession of a premises must strictly comply with the statutory requirements of the act formerly known as the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101 *et seq.* (West 2020); see also Pub. Act 100-173 (eff. Jan. 1, 2018) (replacing most references to "forcible entry and detainer" with "eviction")). *Goodwin* relied on *Belleville Toyota*, wherein our supreme court explained that an argument such as this had some validity under this state's constitutional framework as it existed prior to 1964, when circuit courts' jurisdiction to hear and determine purely statutory causes of action was conferred and limited by the legislature, and the failure to conform strictly to requirements of the pertinent statute prevented the circuit court from acquiring subject matter jurisdiction. *Belleville Toyota*, 199 Ill. 2d at 338. However, except in cases involving administrative review, this is no longer the law under the post-1964 constitutional framework, which vests circuit courts with "original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, § 9; see *Belleville Toyota*, 199 Ill. 2d at 338. Accordingly, " 'in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter.' " *Goodwin*, 2018 IL App (1st) 172141, ¶ 16 (quoting *Belleville Toyota*, 199 Ill. 2d at 334).

¶ 24        Based on *Belleville Toyota*, this court in *Goodwin* rejected the argument that a purported failure to strictly comply with the notice requirements of the Act could deprive a circuit court of subject matter jurisdiction. *Id.* ¶ 18. The court reasoned that any cases holding otherwise had based their rulings directly or indirectly on cases decided prior to *Belleville Toyota*. *Id.* ¶ 19. The court concluded that "the statutory requirements of the Act cannot be jurisdictional, because jurisdiction is conferred on the circuit courts by the Illinois Constitution." *Id.* ¶ 20. " '[T]he failure to comply

with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction ***.' " *Id.* (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 37).

¶ 25    In this case, there is no question that the complaint filed by the landlord presented a justiciable matter. For this reason, the circuit court acquired subject matter jurisdiction over this action. The tenants' argument that the circuit court had no subject matter jurisdiction due to purported defects in the service of the five-day notice relies entirely on case law decided in 1977 and prior, well before the decision in *Belleville Toyota*. For the same reasons set forth in *Goodwin*, we reject the tenants' argument that subject matter jurisdiction is absent in this case.

¶ 26                                    Damages

¶ 27    We next address the tenants' argument that the damages awarded by the trial court were not supported by the evidence. Their argument has two aspects. First, they argue that the damages improperly included an award of future rent through the expiration of the lease's term without any showing by the landlord that it had undertaken reasonable measures to mitigate its damages. Second, they argue that allowing the landlord to retain the equipment and fixtures installed by the tenants at the premises provided the landlord with an inappropriate windfall.

¶ 28    Where a trial court makes an award of damages following a bench trial, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13. A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings appear to be unreasonable, arbitrary, or not based on evidence. *Id.* A reviewing court will not overturn an award of damages unless it finds that the trial judge either ignored the evidence or that its measure of damages was erroneous as a matter of law. *Id.*

¶ 29 In this case, the landlord asserted at trial that it was entitled to damages in the amount of $56,500, reflecting the 10 months then remaining on the lease term at a rate of $5650 per month, pursuant to articles 20(A)(i) and 20(A)(ii) of the parties' lease. Those subsections addressed the landlord's rights in the event of any default under or breach of the lease by the tenant. Article 20(A)(i) provided that the landlord had the right to elect to terminate the lease, the term created by it, and the tenant's right of possession, while article 20(A)(ii) provided that the landlord may elect to terminate the tenant's right of possession without terminating the lease. Both subsections provided that, "In such event Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default." Included within the itemization of damages recoverable by the landlord from the tenants under both subjections was "a sum equal to the amount of unpaid rent and other charges and adjustments called for herein for the balance of the term hereof, which sum shall be due to Landlord as damages by reason of Tenant's default hereunder."

¶ 30 The tenants argue that the landlord nevertheless has a statutory duty in any eviction action to "take reasonable measures to mitigate the damages recoverable against a defaulting lessee." 735 ILCS 5/9-213.1 (West 2020). They assert that a landlord has the burden to prove that it complied with the statutory duty to mitigate damages and that damages otherwise recoverable are reduced if a landlord cannot show that it took reasonable steps to mitigate damages. See *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608 (2009). They go on to assert that a landlord's duty to mitigate includes a duty to make reasonable efforts to re-lease a property following a tenant's breach rather than allowing it to remain vacant and the landlord to collect rent in the form of damages. See *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 290-91 (1998). Accordingly, the tenants argue that the $56,500 in damages

awarded for future rent should be vacated or reduced because the landlord failed at trial to introduce any evidence that it complied with its duty to mitigate damages. They point out that after the trial, they obtained information that the landlord had re-leased the premises to a new tenant, purportedly at a rent higher than they had paid. They contend that damages for future rent must be eliminated or reduced under article 20(C) of the lease, which sets forth the manner by which the proceeds of reletting shall be applied "[i]n the event Landlord relets the Premises."

¶ 31 The landlord argues that the tenants have forfeited the argument that the award of damages was improper because the landlord failed to present evidence of its mitigation of damages at the bench trial. We agree that this argument is forfeited. It does not appear from the record that the tenants ever raised this argument at any time prior to the trial court's entry of judgment in the bench trial. Rather, the argument was first raised in the tenants' motion for reconsideration. Issues that are not raised until a posttrial motion are forfeited and will not be considered on appeal. *Obermeier v. Northwestern Memorial Hospital*, 2019 IL App (1st) 170553, ¶ 132. The bystander's report indicates that during trial, the trial court asked the tenants' attorney what objections the tenants had to the damages requested by the landlord, and the tenants' attorney stated that all charges were excessive, that the attorney fees sought were excessive, and that the landlord would receive a windfall if the equipment were left in place. The tenants' attorney made no argument that the landlord had failed to mitigate damages or that an award of damages would be improper because there had been no evidence of mitigation of damages. By failing to raise this issue, the trial court had no opportunity to consider this issue and address it with the landlord prior to entering judgment in the bench trial.

¶ 32 However, even if we were to consider the tenants' argument, we would reject it. The problem with the tenants' argument is that this is not a situation where the $56,500 was being sought as

post-default *rental payments*, based upon the landlord's having taken possession of the premises and collecting rent due from the tenants for the duration of the lease term while failing or refusing to re-lease the premises to a suitable replacement tenant. Instead, the $56,500 constituted *liquidated damages* owed under a contractual provision whereby the tenants agreed that upon default the landlord was entitled to recover "a sum equal to the amount of unpaid rent and other charges and adjustments called for herein for the balance of the term hereof, *which sum shall be due to Landlord as damages by reason of Tenant's default hereunder*." (Emphasis added.) A liquidated damages provision is an agreement by the parties as to the amount of damages that must be paid in the event of a default. *Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, 122 Ill. App. 3d 940, 947 (1984).

¶ 33    Neither in the trial court nor on appeal have the tenants raised any argument that this provision liquidating damages in the amount of unpaid rent for the balance of the lease term is invalid or unenforceable. It is the general rule that, in the case of an enforceable liquidated damages provision, mitigation is irrelevant and should not be considered in assessing damages. *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1291 (7th Cir. 1985) (applying Illinois law); see also *NPS, LLC v. Minihane*, 886 N.E.2d 670, 675 (Mass. 2008); *Barrie School v. Patch*, 933 A.2d 382, 391-93 (Md. Ct. App. 2007); 24 Williston on Contracts § 65:31 (4th ed. 2021) ("Since the effect of a stipulated damages provision is to substitute a predetermined amount for actual damages sustained by the party entitled to relief, the existence of an enforceable liquidated damages provision has the effect of making the mitigation of damages irrelevant."); 22 Am. Jur. 2d *Damages* § 541 (2021) ("If a liquidated damages clause is valid, the nonbreaching party does not have a duty to mitigate damages following breach."). Therefore, the trial court's awarding of

$56,500 as liquidated damages under this provision without considering the issue of mitigation of damages was not contrary to law or against the manifest weight of the evidence.

¶ 34    This principle is further illustrated by the fact that, in these proceedings, the landlord was seeking to evict tenants in possession of the premises. Thus, at the time when the trial court rendered judgment in the bench trial, the landlord was not in possession of the premises. Any evidence of past mitigation efforts by the landlord would have been irrelevant because no duty to mitigate arises on the part of a landlord until it comes into possession of the premises. See *Block 418, LLC v. Uni-Tel Communications Group, Inc.*, 398 Ill. App. 3d 586, 591 (2010). As such, the trial court could not have meaningfully considered the issue of mitigation of damages at trial in assessing the damages owed under the liquidated damages provision at issue.

¶ 35    It was only after trial, in their motion for reconsideration, that the tenants first raised the issue of mitigation of damages. They later supplemented that motion with a filing stating that, "[u]pon information," the landlord had re-leased the premises to a tenant named Litos for a monthly rent higher than that paid by the tenants in this case. The trial court denied that motion for reconsideration, although the bystander's report contains no explanation of why the trial court denied the motion. The appellate court reviews a trial court's denial of a motion for reconsideration following a bench trial for abuse of discretion, although this can lead to the application of other standards of review depending on whether the underlying issue being reconsidered is legal or factual. *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 24. We find no abuse of discretion in the trial court's denial of the motion to reconsider with respect to the issue of mitigation of damages. As discussed above, the sum at issue was awarded as damages pursuant to a liquidated damages provision that the tenants have not challenged, and mitigation of damages is considered irrelevant where liquidated damages have been contractually agreed to. The fact that after the bench trial the

tenants acquired evidence that the landlord had re-leased the premises is equally irrelevant in light of the fact that the damages were awarded under the liquidated damages provision. As such, the tenants here were not entitled to have the judgment reconsidered based upon information that the landlords had re-leased the premises following the trial.

¶ 36　　For similar reasons, we reject the argument that a duty to mitigate damages in this context is affected by article 20(C) of the lease, which sets forth the order in which proceeds of re-letting the premises shall be applied "[i]n the event Landlord relets the Premises." This provision is immediately preceded by article 20(B), which provides that the landlord "may, but shall not be obligated to, relet all or any part of the Premises for the account of Tenant," and further provides that "Landlord shall not be required, except to the extent expressly required by law, to do any act or exercise any care or diligence with respect to such reletting or to the mitigation of damages of Landlord." We do not interpret article 20(C) as being applicable in this context where the damages at issue were awarded under the liquidated damages provision.

¶ 37　　The second aspect of the tenants' argument concerning damages is that the trial court's order that certain equipment and fixtures be left in place at the premises once the landlord received possession of it constitutes an impermissible windfall to the landlord. That order set forth 18 categories of equipment and fixtures required to be left at the premises, including cook and exhaust hoods; fire suppression systems; fresh air makeup systems; wall panels and covering; wall shelving; sinks; faucets; grease traps; wall tile; light fixtures; electrical fixtures; flooring; paper towel and soap dispensers; walk-in coolers and freezers; cabinetry; countertops; ceiling fans; built-in seating; emergency and exit lighting; bathroom fixtures; heating, ventilation, and air conditioning equipment; walls; and doors. The tenants contend that, in light of the award to the landlord of the full money judgment sought at trial, allowing it also to keep the fixtures that the

tenants had installed amounts to an improper windfall. The tenants request this court reverse the portion of the order directing the equipment to be left in place.

¶ 38     At trial, the evidence showed that on February 11, 2019, the landlord had sent a letter to the tenants referencing article 7 of the lease and listing 18 categories of equipment and fixtures that that the landlord was requiring the tenants to leave in place at the premises when their tenancy ended. These were the same 18 categories of items ultimately reflected in the trial court's order.

¶ 39     The evidence further showed that, in article 7 of the lease, the parties had agreed that the tenants would not make alterations, additions, or improvements to the premises without the landlord's permission and that any alterations, additions or improvements so made by the tenant would be at the tenant's sole cost and expense. Article 7 provided that all "Alterations and Equipment, shall, at Landlord's option in Landlord's sole discretion, become a part of the realty and belong to Landlord." The article defined "Alterations and Equipment" to mean

> "any alterations of, additions to and/or improvements of the Premises made by Tenant and all trade and other fixtures and equipment installed by Tenant that are in any fashion or manner affixed to, attached to or set into the floors, walls, ceilings or structural elements of the Premises including, but not limited to, wall covering, floor covering, lighting, ceilings, carpeting, tile, bathroom equipment and fixtures, window treatments, signs, paneling, built-in cabinets and counters, built-in equipment and machinery, and security devices, grilles, fences and gates."

Article 7 went on to provide that, "[i]n the event Landlord gives written notice to Tenant that Tenant must not remove any of the aforementioned Alterations and Equipment then Tenant must not remove any such items that Landlord has instructed Tenant to leave in the Premises." Removal of such Alterations and Equipment after receiving notice from the landlord not to do so constituted

a breach of the lease. Also, article 7 provided that if the tenant conducted a restaurant business at the premises, the tenant "shall not, unless expressly directed by Landlord to do so, remove or attempt to remove from the Premises or the Property any walk-in coolers or freezers, cooking hood(s), Ansul or other type of fire suppression/extinguishing system(s), or metal exhaust ducts for any such cooking hood(s)." Finally, article 7 concluded with a provision stating, "Notwithstanding anything contained herein to the contrary and *provided that Tenant does not default under the terms of this Lease*, Tenant shall have the right to remove and keep the restaurant equipment that Tenant installs at the Premises," provided it repairs all damage to the premises before the expiration of the term of the lease. (Emphasis added.)

¶ 40    We reject the tenants' argument that the trial court awarded the landlord an improper windfall by ordering that the 18 categories of equipment and fixtures be left in place at the premises after the landlord obtained possession of it. Ultimately, we are not persuaded that this aspect of the trial court's order constituted an award of damages for breach of the contract, as opposed to the trial court's enforcement of the parties' agreement about whether the landlord or the tenants owned the equipment or fixtures that the landlord had allowed the tenants to install during the term of the lease. This is a common topic for a commercial lease to address. While it is arguable that the concluding provision of article 7 set forth above has an effect on whether the landlord's retention of restaurant equipment constitutes contract damages in the event of the tenants' default, the tenants' brief cites no pertinent authority and makes no specific argument about how we should interpret the effect of this provision. The only law cited by the tenants on this point are general statements concerning the compensatory nature of damages in breach of contract cases and that windfalls should be avoided. None of the cases cited by the tenants involve lease provisions similar to article 7 at issue here. As such, we conclude that the trial court's order properly enforced the

agreement reached by the landlord and the tenants under article 7 concerning the ownership of the equipment and fixtures at the conclusion of the lease term. Its order on this matter was not against the manifest weight of the evidence.

¶ 41                          Trial Court's Handling of Trial

¶ 42       Finally, we address the tenants' argument that the trial court abused its discretion by the way in which it handled the trial, causing them prejudice and denying them a fair trial. They argue that the trial court did this by (1) denying the tenants the ability to cross-examine the landlord's sole witness, (2) keeping the court's camera off for the entirety of the trial conducted by video conference, (3) refusing to admit e-mails between Poblete and Winkler as evidence when the landlord's attorney did not object, (4) concluding that the equipment to be left on the premises had no value, and (5) repeatedly discouraging counsel for the tenants from proffering necessary evidence and testimony in an attempt to hasten the trial. We find no merit to these arguments.

¶ 43       As stated above, the record on appeal contains no transcript of the trial or the hearing on the tenants' motion for reconsideration. Instead, the parties have submitted a bystander's report that was certified by the trial court. Conspicuously absent from the bystander's report is any suggestion that the tenants' attorney made a request to cross-examine the landlord's witness that the trial court denied. Even at the hearing on the motion to certify the bystander's report (the transcript of which is included in the record), the tenants' attorney made no assertion that the trial court had denied the tenants the ability to cross-examine a witness and that this fact and the trial court's reasons for it should be reflected in the bystander's report. On appeal, the tenants' only citation to the record is to a page of their own motion for reconsideration. However, it is the contents of a bystander's report certified by the trial court that is conclusive as to what occurred at trial. *Medow v. Flavin*,

336 Ill. App. 3d 20, 38 (2002). Because the bystander's report does not reflect that the trial court denied the tenants the right of cross-examination, we find no merit to this argument by the tenants.

¶ 44     The same can be said of the tenants' arguments that the trial court made a finding that the equipment to be left at the premises had no value or that the trial court discouraged the tenants' attorney from proffering necessary evidence in an attempt to hasten the trial. We find no support in the bystander's report that either of these things occurred at trial, and the argument section of the tenants' brief fails to cite any page of the record where the facts may be found to support the tenants' arguments, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Such failure to properly cite the record on appeal violates this rule, and the consequence of such a violation is waiver of the argument lacking citation. *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009).

¶ 45     While the bystander's report does reflect that the trial judge's "video remained off throughout the trial," it does not reflect that the tenants' attorney objected to this, that a request was made to the trial court to enable its video during the trial, or that the trial court denied such a request. A party desiring to preserve a question for review must make an appropriate objection in the trial court, and the failure to object to preserve a question for review constitutes a waiver. *Obermeier*, 2019 IL App (1st) 170553, ¶ 131. The purpose of this rule is to encourage parties to raise issues in the trial court, thus ensuring that the trial court is given the opportunity to correct any errors prior to appeal and that a party does not obtain reversal through his or her own inaction. *Forest Preserve District v. Royalty Properties, LLC*, 2018 IL App (1st) 181323, ¶ 38. The failure of the bystander's report to reflect that the tenants raised an objection to the trial court's action with respect to its camera results in the waiver of our ability to review this issue. *Medow*, 336 Ill. App. 3d at 38.

¶ 46    Finally, we find no abuse of discretion in the trial court's refusal to admit the e-mails between Poblete and Winkler. Decisions involving the admissibility of evidence are within the trial court's sound discretion and will not be reversed absent an abuse of discretion. *Obermeier*, 2019 IL App (1st) 170553, ¶ 133. The bystander's report reflects that the landlord's attorney did object on grounds of relevance and the lease's integration clause. In response, the tenants' attorney argued to the trial court that the relevance of these e-mails was to support the tenants' defense of an inability to pay and to show that the tenants made efforts to contact the landlord regarding the inability to pay. The tenants' inability to pay the rent owed was not a defense to liability under the contract and was therefore not relevant. Further, the trial court found that Poblete had already testified about the tenants' inability to pay, and it refused to admit the e-mails. This ruling was not an abuse of discretion.

¶ 47                                        CONCLUSION

¶ 48    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 49    Affirmed.

**No. 1-21-0119**

| | |
|---|---|
| **Cite as:** | *2460-68 Clark, LLC v. Chopo Chicken, LLP*, 2022 IL App (1st) 210119 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-M1-705775; the Hon. David A. Skryd, Judge, presiding. |
| **Attorneys for Appellant:** | David R. Buetow and Scott Nehls, of Fuchs & Roselli, Ltd., of Chicago, and Jennifer K. Schwendener, of Petrarca, Gleason, Boyle & Izzo, LLC, of, Downers Grove, for appellants. |
| **Attorneys for Appellee:** | Elizabeth D. Sharp, of Law Offices of Elizabeth D. Sharp, P.C., of Chicago, for appellee. |